**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES FRIERSON**, Individually and as administrator of the ESTATE OF JIM ROGERS, Decedent.<br><br>     Plaintiff,<br><br>     v.<br><br>**CITY OF PITTSBURGH**, A Municipal Corporation, **OFFICERS KEITH EDMONDS**, individually and in his official capacity, **LIEUTENANT MATT GAUNTER**, individually and in his official capacity , **ROBERT PEDEY**, individually and in his official capacity, **PAT DESARO**, individually and in his official capacity, **GREG BOSS**, individually and in his official capacity, **JEFF DEAN**, individually and in his official capacity, **PAUL FROEHLICH**, individually and in his official capacity, **NEYIB VELAZQUEZ**, individually and in his official capacity, **LEROY SCHROCK**, individually and in his official capacity, **SARGEANT COLBY NEIDIG**, individually and in his official capacity and **SARGEANT CAROL EHLINGER**, individually and in his official capacity **JANE DOE 1**, individually and in her official capacity and **JOHN DOE 2**, individually and in his official capacity.<br><br>     Defendants. | Civil Action<br><br> **No.:**  2:22-cv-523<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT IN CIVIL ACTION

AND NOW comes the Plaintiff, James Frierson, individually and as Administrator of the Estate of Jim Rogers, Decedent, by and through his undersigned counsel, Todd J. Hollis, Esquire, of Todd J. Hollis Law, who files the following Complaint in Civil Action, to recover damages for injuries and death sustained as a result of excessive, unreasonable and unnecessary force used by the named Defendants during their arrest of Decedent on October 13, 2022 in violation of his rights under the United States Constitution, stating in support thereof as follows:

## INTRODUCTION

1.  This action arises from the unjustified killing of Mr. Jim Rogers by City of Pittsburgh police officers and EMS technicians.

2.  On the morning of October 13, 2021, Jim Rogers, an unarmed 54-year-old man, was killed in a Pittsburgh residential neighborhood by a City of Pittsburgh police officer who tasered him at least nine (9) times, following which a number of other officers and emergency medical service (hereinafter "EMS") technicians failed to provide needed medical care for him and failed to assess his physical health.

3.  These tragic events began when a citizen at 5110 Harriet Street called the Department of Emergency Services through a 911 call, claiming that she observed Mr. Rogers taking a bicycle from a neighbor's porch.

4.  Officer Keith Edmonds, hereinafter, "Officer Edmonds," was dispatched to the scene; he located Mr. Rogers, who allegedly fit the description of the bicycle-borrower and illegally searched Mr. Rogers' person.

5.  Although Officer Edmonds ascertained that Mr. Rogers  was not armed and presented no physical threat to him or any third party, he tased him nine (9) or ten (10) times.

6.  EMS personnel were summoned to the scene, but technicians never performed any medical assessment of Mr. Rogers, even though he repeatedly begged for medical assistance.

7.  Officers Pat Desaro (hereinafter, "Officer Desaro") and Greg Boss (hereinafter, "Boss") then transported Mr. Rogers in their patrol car by-passing West Penn Hospital, which was just a few blocks away and has an Emergency Department, and instead headed for the Allegheny County Jail.

8. Nearing the jail, the officers determined that Mr. Rogers was becoming more and more unresponsive and finally decided to take him to the Mercy Hospital Emergency Department.

9. Upon arriving there, the officers determined that Mr. Rogers was no longer breathing. He had no pulse and was unresponsive.

10. They began administering cardio pulmonary resuscitation (CPR). Medical staff were able to keep him alive until the next day, when he died.

11. This is a civil rights action seeking damages collectively against the above Defendants for violations of Mr. Rogers' rights, privileges, and immunities guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. §1983, and Pennsylvania common law.

## JURISDICTION AND VENUE

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. This Honorable Court has jurisdiction of the within matters pursuant to 28 U.S.C. §§1331 and §§1343 such that the causes of action enumerated herein arise under the Constitution, treaties or laws of the United States.

14. In particular, the causes of action enumerated herein arise under the Civil Rights Act of 1871, as amended, 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments of the United States Constitution. Further, this Honorable Court has supplemental jurisdiction of state law claims pursuant to 28 U.S.C. §1367(a).

15. Venue is properly laid in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because: (a) Defendants reside in and/or conduct business in this judicial district; and/or (b) because the acts and omissions giving rise to the claims set forth herein (including specifically Mr. Rogers' arrest by Defendant officers and the injuries and death resulting therefrom) occurred exclusively in this judicial district.

## PARTIES

16. Mr. Rogers was, at the time of his death, a 54-year old man with a long history of mental health issues and who resided in Pittsburgh, Pennsylvania.

17. Plaintiff is James Frierson, Administrator of the Estate of Jim Rogers. Mr. Frierson is a resident of Allegheny County.

18. Defendant, City of Pittsburgh, is a municipality in the Commonwealth of Pennsylvania, which, at all relevant times, employed Pittsburgh police officers who were at the scene of the Decedent's seizure and transport and who committed and/or participated in the wrongful acts alleged herein and/or did nothing to prevent Defendant officers' illegal acts.

19. Defendant Officer Keith Edmonds is/was a City of Pittsburgh police officer who, at all relevant times, was employed by the City of Pittsburgh, Pennsylvania. At all times relevant hereto, Defendant Edmonds was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

20. Lieutenant Matt Gaunter is/was a City of Pittsburgh police officer who, at all relevant times, was employed by the City of Pittsburgh, Pennsylvania. At all times relevant hereto, Defendant Gaunter was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

21. Defendant Officer Pat Desaro is/was a City of Pittsburgh police officer who, at all relevant times, was employed by the City of Pittsburgh, Pennsylvania. At all times relevant hereto, Defendant Desaro was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

22. Defendant Gregory Boss is/was a City of Pittsburgh police officer who, at all relevant times, was employed by the City of Pittsburgh, Pennsylvania. At all times relevant hereto, Defendant Boss was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

23. Defendant Jeffrey Dean is/was a City of Pittsburgh police officer who, at all relevant times, was employed by the City of Pittsburgh, Pennsylvania. At all times relevant hereto, Defendant Dean was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

24. Defendant Paul Froehlich is/was a City of Pittsburgh police officer who, at all relevant times, was employed by the City of Pittsburgh, Pennsylvania. At all times relevant

hereto, Defendant Froehlich was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

25. Defendant Neyib Velazquez is/was a City of Pittsburgh police officer who, at all relevant times, was employed by the City of Pittsburgh, Pennsylvania. At all times relevant hereto, Defendant Velazquez was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

26. Defendant Colby Neidig is/was a City of Pittsburgh police officer who, at all relevant times, was employed by the City of Pittsburgh, Pennsylvania. At all times relevant hereto, Defendant Neidig was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

27. Defendant Carol Ehlinger is/was a City of Pittsburgh police officer who, at all relevant times, was employed by the City of Pittsburgh, Pennsylvania. At all times relevant hereto, Defendant Ehlinger was acting within the scope of her employment as such. She is being sued both in her individual and official capacity.

28. Defendant Leroy Schrock is/was a City of Pittsburgh police officer who, at all relevant times, was employed by the City of Pittsburgh, Pennsylvania. At all times relevant hereto, Defendant Schrock was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

29. Defendant Officer Robert Pedey is/was a City of Pittsburgh police officer who, at all relevant times, was employed by the City of Pittsburgh, Pennsylvania. At all times relevant hereto, Defendant Pedey was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

30. Defendants John and Jane Does are EMTs and/or paramedics employed by the City of Pittsburgh. They are being sued both in their individual and official capacity.

## **JURY DEMAND**

31. Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

32. On October 13, 2021, Jim Rogers, an unarmed 54-year-old man with a long psychiatric history, was walking in the Friendship neighborhood of Pittsburgh, Pennsylvania.

33. At approximately 10:20 a.m., Mrs. Lauren Crossett contacted the City of Pittsburgh police stating that a man was stealing a bicycle from her neighbor's porch.

34. It was later determined that this bicycle was being offered for free and that the neighbor did not characterize this conduct as a "theft."

35. At approximately, 10:29 a.m., Officer Edmonds arrived in the general location and located Mr. Rogers on Harriet Street.

36. Upon information and belief, Officer Edmonds began questioning Mr. Rogers and performed a search of his person and ascertained that Mr. Rogers had no weapons or other contraband.

37. Upon information and belief, Officer Edmonds threw Mr. Rogers to the ground. A video of the situation shows that Officer Edmonds unreasonably escalated the matter by yelling at Mr. Rogers and then employed his taser and electrocuted Mr. Roger's nine (9) or ten (10) times.

38. Upon information and belief, the electric current administered to Mr. Rogers caused him extreme pain, suffering and mental anguish.

39. At approximately 10:31 a.m., the following individuals arrived on the scene: Officers Pedey, Desaro, Boss, Dean, Gaunter, Schrock, Sargeant Neidig and Sargeant Ehlinger.

40. At 10:40 a.m. police requested that an ambulance be dispatched to the scene, because one or more of the officers had Mr. Rogers' blood on them.

41. Upon information and belief, Mr. Rogers, while still on Harriet Street, repeatedly requested that he be provided medical help and taken to a hospital.

42. No police officer or EMS employees on the scene listened to or acceded to his request.

43. Upon arrival at the scene of arrest, EMTs and/or paramedics failed to obtain an accurate history from the officers about what had occurred, failed to assess Mr. Rogers'

condition, and failed to advise the officers that Mr. Rogers' condition was life-threatening.

44. At the scene, it should have been apparent to EMS personnel that Mr. Rogers had suffered life-threatening harm from the multiple tasering and given that he was bleeding profusely.

45. Officers Pat Desaro and Greg Boss were tasked with transporting Mr. Rogers to jail.

46. Upon information and belief, Mr. Rogers repeatedly asked that he be provided medical help. Neither Officers Desaro nor Boss nor any other City of Pittsburgh Police officer acceded to these pleas for help.

47. The officers either knew or should have known of Mr. Roger's critical medical needs. Despite Mr. Rogers' quickly deteriorating physical health, Officers Pat Desaro and Greg Boss bypassed West Penn Hospital, which was just a few blocks from the scene of the police brutality and continued to the Allegheny County Jail.

48. However, upon nearing the jail, they determined that Mr. Rogers' rapid decline deserved medical attention so they proceeded to Mercy Hospital, just blocks from the jail. There, it was determined that Mr. Rogers no longer had a pulse or was breathing. Emergency Department staff came out to the police vehicle to perform life-saving medical care.

49. Mr. Rogers entered the Emergency Department at approximately 11:16 a.m.

50. On October 14, 2021, Mr. Rogers died at approximately 10:15 a.m.

51. Officer Edmonds' brutal attack on Mr. Rogers through the repeated use of a taser on an unarmed, nonviolent, older gentleman was without cause or justification and undertaken recklessly, wantonly and with gross negligence.

52. This attack caused Mr. Rogers personal injury, pain, suffering, extreme emotional distress, mental anguish, and ultimately death.

53. The actions and omissions of the Defendants that caused delay in the delivery of appropriate emergency medical care to Mr. Rogers were without cause or justification, and were undertaken intentionally, maliciously, recklessly, wantonly and/or with gross negligence.

54. As a consequence of his death, Mr. Rogers was deprived of the pleasures and enjoyment of life, liberty, and the pursuit of happiness.

55. Upon information and belief, Officer Edmonds has a history of tasering individuals for minor unnecessary matters.  On June 20, 2021 at OTN G 890134-0 Officer Edmonds tasered Mr. Troy Reed.

56. In that matter Mr. Reed was being arrested for a minor retail theft charge.  He was running away from Officer Edmonds and presented no threat to him or any other third party, yet Officer Edmonds employed an unreasonable use of force to apprehend Mr. Reed.

57. The City of Pittsburgh failed to discipline Mr. Edmonds and as such tacitly accepted Mr. Edmonds' actions.


## COUNT ONE

## 42 U.S.C. §1983: USE OF EXCESSIVE FORCE IN VIOLATION OF MR. ROGER'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION
## (AGAINST OFFICER KEITH EDMONDS individually and in his official capacity)

58. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

59. By the above assault in which Officer Edmonds employed his taser (upon information and belief) nine (9) times against Mr. Rogers, Defendant Officer Edmonds deprived Mr. Rogers of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S. C. §1983, including, but not limited to rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

60. Upon information and belief, Officer Edmonds searched Mr. Rogers upon first making contact with him.

61. Officer Edmonds found no weapons or contraband on Mr. Rogers.

62. Nevertheless, Officer Edmonds deployed his taser at Mr. Rogers approximately nine (9) or ten (10) times.

63. At no time during any of the events alleged herein was Mr. Rogers ever observed to be a threat to Officer Edmonds or any other person or in possession of any sort of weapon.

64. At no time during any of the events alleged herein was Mr. Rogers ever observed to attempt to swing at, punch, kick, strike or otherwise harm any police officer, EMT, paramedic, civilian, or any other individual present at the scene.

65. The excessiveness of the force used against Mr. Rogers is evidenced by:
   a. the lack of the severity of the charged crime (stealing a bike at most, taking a free bike with permission off a porch, at the least);
   b. the lack of any threat to the safety of the officers or anyone in the public;
   c. the lack of any active resistance to being arrested; and
   d. the short gaps between bursts of tasing suggesting that Mr. Rogers was not given the chance to comply.

66. Upon information and belief, Defendant Officer Edmonds knew or should have known of the *City of Pittsburgh Police Department's Taser Policy, Order # 12-13, effective date of 5/1/ 2012*, which states at Paragraph 1.2 that the Taser is approved to control actively resisting subjects, aggressive non-compliant subjects, violent or potentially violent subjects.

67. Mr. Rogers fell within none of these categories and thus Officer Edmonds was not authorized to taser him.

68. Additionally, Officer Edmonds had no probable cause to arrest Mr. Rogers and thus was not entitled to detain him. Accordingly, any use of force, much less lethal force, would have been excessive.

69. Mr. Rogers did not pose a threat to the safety of Officer Edmonds or any other officer or civilian so as to justify the repeated use of the taser.

70. Defendant Edmonds acted at all relevant times under color of state law and in his individual and official capacities and/or within the scope of his employment with the Pittsburgh Police Department.

71. Said acts by Defendant Officer Edmonds were committed without authority of law, and in abuse of his powers, and in a manner in which he willfully, knowingly, and with specific intent deprived Mr. Rogers of his constitutional rights secured by 42 U.S.C. §1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

72. As a direct and proximate result of said violation, Mr. Rogers suffered the injuries and death and damages described above in an amount to be determined at trial.

## COUNT TWO

### 42 U.S.C. §1983: DELIBERATE INDIFFERENCE TO MEDICAL NEEDS -AGAINST OFFICERS KEITH EDMONDS individually and in his official capacity, LIEUTENANT MATT GAUNTER individually and in his official capacity, ROBERT PEDEY individually and in his official capacity, PAT DESARO individually and in his official capacity, GREG BOSS individually and in his official capacity, JEFF DEAN individually and in his official capacity, PAUL FROEHLICH individually and in his official capacity, NEYIB VELAZQUEZ individually and in his official capacity, LEROY SCHROCK individually and in his official capacity, SGT. COLBY NEIDIG individually and in his official capacity AND SGT. CAROL EHLINGER individually and in her official capacity

73. Plaintiff realleges each allegation contained in the preceding paragraphs as if set forth separately herein.

74. Defendant officers, acting under color of state law, violated 42 U.S.C. §1983 by depriving Mr. Rogers of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, by preventing and denying him critical medical attention, by engaging in the following activities demonstrating their deliberate indifference:

   a. Restraining Mr. Rogers and keeping him in a prone position on the ground despite him being injured and having been tasered multiple times;
   b. Failing to direct EMTs and/or paramedics to medically assess Mr. Rogers;
   c. Directing EMTs and/or paramedics only to attend to police officers;
   d. Failing to inform EMTs and/or paramedics that Mr. Rogers had been tasered nine (9) times;
   e. Transporting him ostensibly to the Allegheny County Jail, and bypassing West Penn Hospital (and other proximally related hospitals) – only a few blocks from the scene of the excessive force – and only deviating from their route to go to Mercy Hospital once Mr. Jim Rogers lost consciousness, needing CPR; and
   f. Failing to provide Emergency Department medical staff with a full understanding of what had happened to Mr. Rogers, leaving medical staff with "no real story on patient" thus hampering their ability to give him the best possible medical care.

75. These acts and omissions demonstrated deliberate indifference to Mr. Rogers who had been tasered at least nine (9) times.

76. Given that all Defendant officers should have known that a taser should only be employed a maximum of three (3) times against a person, it is asserted that they all knew

10

or should have known that Mr. Rogers likely was physically harmed by the multiple tasering he received at the hands of Officer Edmonds.

77. Additionally, all Defendant officers were in the close vicinity of Mr. Rogers while he was restrained on the ground. They could observe his deteriorating physical condition and/or hear him repeatedly asking for medical help, and could observe that he was bleeding.

78. Upon information and belief, Mr. Rogers said he could not breathe, requested medical attention, suffered labored breathing, and was bleeding.

79. Upon information and belief, all officers at the scene were close enough to Mr. Rogers to hear his pleas for medical assistance and/or observe his medical condition.

80. Defendant officers prevented Mr. Rogers from obtaining timely medical care, prolonged his pain and suffering, and caused his injuries to worsen and to lead to death.

81. All of the Defendant officers knew or should have known that the taser delivered an electric current into Mr. Rogers' body, and that given his age, was likely to have medical consequences that, at the least, should have been assessed by those EMS personnel called to the scene.

82. Mr. Rogers was struck in his back with the Taser probes and repeatedly drive stunned by Officer Edmonds.

83. Upon information and belief, the Defendant officers knew or should have known of the **City of Pittsburgh Police Department's Taser Policy, Order # 12-13, effective date of 5/1/ 2012**, which states that if an officer observes any objective sign indicating that the subject requires immediate medical treatment following exposure to the discharge of the Taser, either by contact stun or by probes, the EMS unit is to be summoned to the scene immediately.

84. Upon information and belief, Defendant officers knew or should have known of the **City of Pittsburgh Police Department's Taser Policy, Order # 12-13, effective date of 5/1/ 2012**, which states at Paragraph 7.2 that a medical release from a hospital will be obtained for all subjects exposed to the discharge of the taser, either by contact/drive stun or probes if the subject is to be lodged in the county jail or other detention facility. These policies placed Defendant officers on notice that they were to summon medical assistance when a criminal suspect is tasered and displays objective signs of the need for medical help.

85. The officers' delay in transporting Mr. Rogers to an Emergency Department was not brief given the extent of his significant injuries.

86. Upon information and belief, the delay in providing Advanced Life Support ("ALS") Services to Mr. Rogers materially reduced his chances of survival and/or was a contributing cause of his death.

87. Upon information and belief, the delay in bringing Mr. Rogers to the hospital was a final, contributing cause of his death.

88. As a direct and proximate result of said violation, Mr. Rogers suffered the injuries, death and damages described above in an amount to be determined at trial.


## COUNT THREE

### 42 U.S.C. §1983: FALSE ARREST
### (AGAINST OFFICER KEITH EDMONDS individually and in his official capacity)

89. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

90. Officer Edmonds, upon being summoned to Harriet Street, immediately questioned and then searched Mr. Rogers.  He found no weapon or contraband.

91. Before conducting any investigation to substantiate Mrs. Crossett's claim that it appeared that Mr. Rogers was stealing a bike from a neighbor's porch, and although there was no bike in Mr. Roger's possession at the time of the interaction, Defendant Officer Edmonds seized Mr. Rogers without probable case and in violation of Mr. Rogers' Fourth Amendment rights, as protected by 42 U.S.C. §1983.

92. This seizure was made without probable cause that Mr. Rogers had committed a crime or was in possession of contraband.

93. As a direct and proximate result of said violation, Mr. Rogers suffered the injuries, death and damages described above in an amount to be determined at trial.

## COUNT FOUR

### 42 U.S.C §1983: CONSPIRACY TO VIOLATE RIGHTS SECURED UNDER THE FOURTH AND FOURTEENTH AMENDMENTS
**-AGAINST OFFICERS KEITH EDMONDS** individually and in his official capacity**, LIEUTENANT MATT GAUNTER** individually and in his official capacity**, ROBERT PEDEY** individually and in his official capacity**, PAT DESARO** individually and in his official capacity**, GREG BOSS** individually and in his official capacity**, JEFF DEAN** individually and in his official capacity**, PAUL FROEHLICH** individually and in his official capacity**, NEYIB VELAZQUEZ** individually and in his official capacity**, LEROY SCHROCK** individually and in his official capacity**, SGT. COLBY NEIDIG** individually and in his official capacity **AND SGT. CAROL EHLINGER** individually and in her official capacity

94. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

95. The Defendant officers conspired to deny Mr. Roger' rights under the Fourth and Fourteenth Amendment, pursuant to 42 U.S.C. §1983.

96. Said conspiracy included, but is not limited to, the filing of false or misleading reports regarding the circumstances of Mr. Roger's death and the issuance of inaccurate statements by the City or its employees regarding the circumstances of Mr. Roger's seizure and search by the Defendants and the use of excessive force and the improper use of a Taser.

97. Said conspiracy is further evidenced by one or more Defendant officers, at the scene, attempting to position their bodies so that bystanders could not see or videotape Mr. Rogers or officers' interactions with him.

98. Said conspiracy was designed to prevent the family and the public from learning the true circumstances regarding Mr. Roger's death and constituted a cover-up.

99. As a direct and proximate result of said violation, Mr. Rogers suffered the injuries, death and damages described above in an amount to be determined at trial.

## COUNT FIVE

### 42 U.S.C. §1983: DELIBERATE INDIFFERENCE TO MEDICAL NEEDS
**-*AGAINST JOHN DOE*** individually and in his official capacity ***AND JANE DOE*** individually and in her official capacity**, *EMPLOYEES OF THE CITY OF PITTSBURGH* <u>*EMERGENCY MEDICAL SERVICES*</u>**

100. Plaintiff realleges each allegation contained in the preceding paragraphs as if set forth separately herein.

101. On October 13, 2021, police contacted Emergency Medical Services ("EMS") who were dispatched to the scene of the events described herein.

102. John and Jane Doe, employees of EMS, arrived at the location.

103. Upon information and belief, officers at the scene directed EMS personnel to assess officers who had been contaminated when Mr. Rogers' blood ended up on them.

104. Upon information and belief, officers at the scene did not inform EMS employees that Mr. Rogers had been tasered nine (9) or ten (10) times or that he was bleeding.

105. Upon information and belief, EMS employees  should have realized that since blood was found on the police officers, but that none of the officers had any wounds or injuries, the blood must have originated from Mr. Rogers.

106. It is believed and averred that the amount of blood that ended up on the Defendant police officers should have alerted EMS personnel that Mr. Rogers needed medical care.

107.  The failure of the EMS personnel to provide this care was proximally related to Mr. Roger's death.

108.  Upon information and belief, EMS employees never assessed Mr. Rogers.

    1.  They never questioned him,
    2.  took his pulse,
    3.  checked his respiration,
    4.  took his blood pressure,
    5.  checked for head trauma,
    6.  looked over his body,
    7.  talked to him,

8.  assessed taser prong wounds,
9.  attempted to determine how many times he was tasered,
10. removed taser hooks,
11. Provided any other reasonable medical care,
12. or ensured that his airway was unimpeded despite being on notice of potential injuries and a duty to provide care to him.

109. The EMS personnel knew or should have known that Mr. Roger's was injured from being tasered when they over heard Officer Edmonds state on numerous occasions "Taser Deployed" "Step it up" during his conversations with the 911 operator.

110. The EMS personnel knew or should have known that Mr. Rogers was bleeding, given that his blood allegedly ended up on one or more of the officers, prompting their request that the EMTs decontaminate their exposure to human fluids.

111. John and Jane Doe acted under the color of state law when they decided not to treat Mr. Rogers.

112. As a direct and proximate result of the EMS employees' deliberate indifference to Mr. Rogers' serious medical needs, he suffered the injuries, death and damages described above in an amount to be determined at trial.


## COUNT SIX

## 42 U.S.C. §1983: NEGLIGENT HIRING, TRAINING, DISCIPLINE, SUPERVISION, MONITORING AND RETENTION OF EMPLOYEES (AGAINST CITY OF PITTSBURGH)

113. Plaintiff repeats, reiterates and realleges each and every allegation contained herein above with the same force and effect as if hereinafter set forth at length.

114. Defendant City of Pittsburgh has violated Mr. Rogers' rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the Fourth and Fourteenth Amendments to the U.S. Constitution, and laws of Pennsylvania.

115. Defendant City of Pittsburgh, through its Police Department, owed a duty of care to Mr. Rogers to prevent the physical and mental abuse he sustained and his death.

116. Upon information and belief, the Defendant officers were unfit and incompetent for their positions as police officers.

117. The City of Pittsburgh, through its Police Department, was knowing, reckless and deliberately indifferent in:

1. Hiring officers who proximately caused Mr. Rogers' injuries and death;
2. Failing to adequately train its officers as to the probable cause needed to effectuate a legal arrest in accordance with established state and federal constitutional principles;
3. Failing to adequately train its officers how to interact with psychiatrically ill citizens and suspects;
4. Failing to adequately train its officers in the appropriate use of a taser, which use must comply not only with state and federal constitutional principles but with the taser manufacturer's guidelines for use;
5. Failing to adequately train its officers in the appropriate use of force given state and federal constitutional principles;
6. Failing to adequately supervise its officers in the appropriate use of force given state and federal constitutional principles;
7. Failing to adequately discipline officers who violate constitutional and police standards governing the appropriate use of force;
8. Failing to adequately monitor its officers who employ the use of excessive force against residents and criminal suspects;
9. Failing to adopt and implement appropriate policies regarding use of force and use-of-force training;
10. Failing to train officers in de-escalation measures and to avoid instigating physical confrontation by using communication tools;
11. Failing to adequately train its officers in the appropriate provision of medical care to arrestees and pretrial detainees given state and federal constitutional principles;
12. Failing to take adequate measures to address, remedy and/or minimize patterns of racial profiling in policing and use of force against suspects; and
13. Permitting officers to target African-American males as victims of police brutality and false arrests.

118. The City of Pittsburgh, through its Emergency Medical Services, was knowing, reckless and deliberately indifferent in:

1. Hiring EMTs and paramedics who proximately caused Mr. Rogers' injuries and death;

2. Failing to adequately train its EMTs and paramedics how to interact with psychiatrically ill citizens and suspects;

3. Failing to adequately train its EMTs and paramedics in the appropriate response to police scenes where a criminal suspect has been tasered by police;

4. Failing to adequately train its EMTs and paramedics to assess all potential medical victims at the scene of a police incident rather than fully deferring to police officers' directives;

5. Failing to adequately supervise its EMTs and paramedics in their response to police scenes where force has been used against a civilian;

6. Failing to adequately discipline EMTs and paramedics who fail to provide needed medical care to individuals at the scene where EMS has been called;

7. Failing to adopt and implement appropriate policies regarding the provision of medical care to those who have been tasered;

8. Failing to adequately train its officers in the appropriate provision of medical care to arrestees and pretrial detainees given state and federal constitutional principles; and

9. Failing to take adequate measures to address, remedy and/or minimize patterns of racial profiling in the provision of medical care.

119. Upon information and belief, because the City of Pittsburgh's, through its Police Department's, negligent hiring, training, re-training, discipline, supervision, monitoring and retention of the aforementioned Defendant officers and EMS personnel, Mr. Rogers incurred significant physical and mental injuries and ultimately death.

120. The City's failings, as listed above, directly and proximately caused Mr. Rogers' death.

121. As a direct and proximate result of said violation, Mr. Rogers suffered the injuries, death and damages described above in an amount to be determined at trial.

**COUNT SEVEN**

**WRONGFUL DEATH UNDER PENNSYLVANIA COMMON LAW**
**(AGAINST CITY OF PITTSBURGH AND OFFICERS KEITH EDMONDS** individually and in his official capacity, **LIEUTENANT MATT GAUNTER** individually and in his official capacity**, ROBERT PEDEY** individually and in his official capacity**, PAT DESARO** individually and in his official capacity, **GREG BOSS,** individually and in his official capacity **JEFF DEAN** individually and in his official capacity**, PAUL FROEHLICH** individually and in his official capacity, **NEYIB VELAZQUEZ** individually and in his official capacity**, LEROY**

**SCHROCK** individually and in his official capacity**, SGT. COLBY NEIDIG** individually and in his official capacity
**AND SGT. CAROL EHLINGER** individually and in her official capacity

122. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

123. Defendant officers, acting within the scope of their employment, caused and/or contributed to the death of Mr. Rogers, by their use of force, without cause or justification and/or their deliberate indifference to his need for immediate medical care.

124. Defendant City of Pittsburgh is responsible for its employees' actions taken in the scope of their employment as employees, police officers, and medical personnel.

125. As a direct and proximate result of said violation, Mr. Rogers suffered the injuries, death and damages described above in an amount to be determined at trial.

## COUNT EIGHT

### ASSAULT AND BATTERY UNDER PENNSYLVANIA COMMON LAW -AGAINST CITY OF PITTSBURGH AND OFFICER KEITH EDMONDS individually and in his official capacity

126. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

127. Defendant Edmonds, acting within the scope of his employment, intentionally, willfully, and maliciously assaulted Mr. Rogers when he tasered him (upon information and belief) nine (9) or ten (10) times.

128. Defendant Edmonds, without just cause, or provocation, used excessive force against Mr. Rogers and engaged in willful misconduct. The use of such force was not justified or warranted under the circumstances and constituted the unreasonable and unnecessary use of force.

129. The use of such force caused Mr. Rogers to suffer and experience fear and imminent apprehension of physical harm, pain and suffering, severe emotional distress, and death.

130. The actions of Defendant Edmonds were intentional, malicious, and were committed with wanton disregard for the rights of Mr. Rogers.

131. The actions of Defendant Edmonds were unjustified and unnecessary in the performance of his duties as a police officer and were unreasonable, unwarranted and constituted excessive use of force.

132. These actions constituted unlawful assaults and/or batteries upon Mr. Rogers.

133. Defendant, City of Pittsburgh, as the employer of Officer Edmonds, is responsible for his wrongdoing under the doctrine of respondent superior.

134. As a direct and proximate result of said violation, Mr. Rogers suffered  injuries, death and damages described above in an amount to be determined at trial.

### COUNT NINE

**INTENTIONAL/RECKLESS INFLICTION OF EMOTIONAL DISTRESS
(AGAINST CITY OF PITTSBURGH AND OFFICERS KEITH EDMONDS** individually and in his official capacity**, LIEUTENANT MATT GAUNTER** individually and in his official capacity**, ROBERT PEDEY** individually and in his official capacity**, PAT DESARO** individually and in his official capacity**, GREG BOSS** individually and in his official capacity**, JEFF DEAN** individually and in his official capacity**, PAUL FROEHLICH** individually and in his official capacity**, NEYIB VELAZQUEZ,** individually and in his official capacity **LEROY SCHROCK** individually and in his official capacity**, SGT. COLBY NEIDIG** individually and in his official capacity
**AND SGT. CAROL EHLINGER** individually and in her official capacity

135. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

136. Defendant Edmonds intentionally deployed his taser at Mr. Rogers (upon information and belief) nine times.

137. All Defendant officers prevented EMTs from assessing Mr. Rogers, then delayed in providing needed medical assistance for him despite his pleas for help and his deteriorating health.

138. As a result of Defendants' actions, Mr. Rogers suffered extreme and severe emotional distress before his death.

139. Defendant officers knew that such distress was substantially certain to result from their conduct or, at a minimum, acted in disregard of a substantial probability of causing severe emotional distress.

140. Defendants City of Pittsburgh is responsible for the wrongdoing of its agents, servants and/or employees, under the doctrine of respondent superior.

141. As a direct and proximate result of said violation, Mr. Rogers suffered the injuries and death and damages described above in an amount to be determined at trial.

### COUNT TEN

**SURVIVAL ACTION**
**WRONGFUL DEATH UNDER PENNSYLVANIA COMMON LAW**
**(AGAINST CITY OF PITTSBURGH AND OFFICERS KEITH EDMONDS** individually and in his official capacity, **LIEUTENANT MATT GAUNTER** individually and in his official capacity, **ROBERT PEDEY** individually and in his official capacity, **PAT DESARO** individually and in his official capacity, **GREG BOSS,** individually and in his official capacity **JEFF DEAN** individually and in his official capacity, **PAUL FROEHLICH** individually and in his official capacity, **NEYIB VELAZQUEZ** individually and in his official capacity, **LEROY SCHROCK** individually and in his official capacity, **SGT. COLBY NEIDIG** individually and in his official capacity
**AND SGT. CAROL EHLINGER** individually and in her official capacity

142. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

143. Defendant City of Pittsburgh and Officers, acting within the scope of their employment, caused and/or contributed to the death of Mr. Rogers, by their use of force, without cause or justification and/or their deliberate indifference to his need for immediate medical care.

144. Defendant City of Pittsburgh is responsible for its employees' actions taken in the scope of their employment as employees, police officers, and medical personnel.

145. As a direct and proximate result of said violation, Mr. Rogers suffered the injuries, death and damages described above in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

(A) an order declaring that Defendants' conduct violated Mr. Roger's rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;
(B) an order granting compensatory damages in an amount to be determined at trial;
(C) an order awarding punitive damages against Defendants in an amount to be determined at trial;
(D) an order awarding Plaintiff reasonable attorneys' fees and costs under 42 U.S.C. §1988.

**JURY TRIAL DEMANDED**.

TODD J. HOLLIS LAW

By: /s/ Todd J. Hollis
Todd J. Hollis, Esquire
Supreme Court I.D. No. 72510

202 Penn Plaza
Turtle Creek, Pennsylvania
412.434.0252 phone
412.646.5748 Facsimile
Counsel for the Plaintiff:
**JAMES FRIERSON**, Individually and as administrator of the ESTATE OF JIM ROGERS, Decedent.

Date:  April 4, 2022